## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERRIN RECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:09-cv-115 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| COUNTY OF BLAIR, PENNSYLVANIA, | ) | |
| and JAMES DIFRANCESCO, Chief | ) | |
| Public Defender, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 37) pursuant to Fed. R. Civ. P. 56. Defendants have also filed a Brief in Support of the Motion (Doc. No. 38). Plaintiff has filed a Brief in Opposition (Doc No. 42). For reasons set forth herein, Defendants' motion is **DENIED**.

### II. JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. FACTUAL AND PROCEDURAL BACKGROUND

This suit arises from Defendants' termination of Plaintiff's employment shortly after her return to work following her pregnancy and maternity leave. Plaintiff seeks relief on a number of claims; unsurprisingly, the vast majority of relevant facts are in dispute. What is certain is that

1

on November 26, 2007, Plaintiff, who had no previous criminal law experience, began employment as a full-time Blair County Assistant Public Defender at a salary of $30,000 a year. Defendants' Concise Statement of Material Facts (Doc. No. 39) at ¶¶ 5-6; Plaintiff's Response to Defendants' Concise Statement of Material Facts (Doc. No. 44) at ¶¶ 5-6; Plaintiff's Concise Statement of Material Facts (Doc. No. 46) at ¶ 14. The following March, Plaintiff learned that she was pregnant, and shortly thereafter notified her employer of her condition and began discussions concerning a future leave of absence for her late term pregnancy, delivery, and subsequent recovery. Doc. No. 39 at ¶¶ 31-3; Doc. No. 44 at ¶¶ 31-3. At least some of the terms of this leave of absence were memorialized in a formal written request by Plaintiff on July 15, 2008, and later approved by Defendant DiFrancesco. Doc. No. 39 at ¶ 37; Doc. No. 44 at ¶ 37. On October 17, 2008, Plaintiff gave birth via caesarean section delivery, and suffered health complications as a result. Second Amended Complaint (Doc. No. 23) at ¶ 14; Answer (Doc. No. 30) at ¶ 14. She returned to work on November 19, 2008 on a part-time schedule approved both by her and the Blair County Salary Board. Doc. No. 39 at ¶ 41; Doc. No. 44 at ¶ 41. Subsequent to her return, Plaintiff was paid an hourly rate based on a proration of her previous salary as a full-time employee. Doc. No. 39 at ¶ 41; Doc. No. 44 at ¶ 41. On December 18, 2008, Plaintiff was terminated from employment, on the grounds that she purportedly falsified time cards subsequent to returning from her medical leave of absence. Doc. No. 39 at ¶ 52; Doc. No. 44 at ¶ 52.[1]

Plaintiff's Second Amended Complaint alleges that Defendant Blair County violated the Equal Pay Act, Title VII of the Civil Rights Act, the Pennsylvania Human Relations Act, and the

---

[1] Plaintiff argues in her Response to Defendant's Concise Statement of Material Facts that the timecard justification was mere pretext. However, both parties agree that the alleged falsification of timecards was the proffered explanation for her termination at the time. See Plaintiff's Concise Statement of Material Facts Precluding Summary Judgment (Doc. No. 46) at ¶¶ 148-9.

Family Medical Leave Act during the course of her employment with, and eventual discharge by, Blair County. Plaintiff further alleges that Defendants Blair County and James DiFrancesco violated the Equal Protection Clause of the Fourteenth Amendment. In response, Defendant Blair County contends that Plaintiff has failed to establish a *prima facie* case for any of her claims, and that even if she has, there is a legitimate reason for her termination and any discrepancy in pay. Further, Defendant James DiFrancesco contends that he is entitled to qualified immunity for Plaintiff's Equal Protection claims.

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[2] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but

---

[2] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

"must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

## V. DISCUSSION

### A.  Equal Pay Act

Plaintiff's Second Amended Complaint alleges that Defendant Blair County willfully violated the Equal Pay Act by paying Plaintiff "at rates less than the rates it pays male attorneys in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions."[3]  Doc. No. 23 at ¶¶ 28-9.  In response, Defendant argues that Plaintiff has not met her *prima facie* burden under the statute, and that even if she has, any pay discrepancy can be explained by reasons other than gender.  Defendant further argues that Plaintiff's EPA claim is beyond the statute of limitations because Defendant did not willfully violate the EPA, and that any employment action taken against Plaintiff was in good faith.  The Court addresses each of these arguments in turn.

#### 1. Plaintiff's burden under the EPA

The Court first notes that Defendant's argument regarding Plaintiff's Equal Pay Act (EPA) claim is styled as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Defendant asserts that Plaintiff's EPA claim

---

[3] Because Plaintiff's Equal Pay Act, Title VII, Pennsylvania Human Relations Act, and FMLA claims are made solely against Defendant Blair County, the Court refers to Blair County as Defendant in its discussion of those claims. For Plaintiff's 42 U.S.C. § 1983 claim, brought against both Blair County and DiFrancesco, the Court refers to the Defendants collectively, unless it needs to specify to which of the two Defendants it is referring.

"should be dismissed" because Plaintiff has purportedly not named her alleged comparators. Doc. No. 38 at 8-9. However, such a motion is tardy, as "[a] motion asserting [a 12(b)(6) defense] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). No such motion was filed prior to Defendants' June 29, 2010 Affirmative Defenses and Answer to Plaintiff's Second Amended Complaint (Doc. No. 30). Accordingly, the Court will consider Defendant's Equal Pay Act arguments only as they pertain to a motion for summary judgment.

Evaluating an EPA claim involves a two-step burden-shifting paradigm. First, to establish a *prima facie* case under the EPA, Plaintiff must show that Defendant Blair County paid employees of the opposite sex differently for performing equal work, defined as work of substantially equal skill, effort and responsibility, under similar working conditions. *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (citing *EEOC v. Del. Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1413-4 (3d Cir. 1989). This inquiry is informed by the EPA's implementing regulations, which provide that "[s]kill includes consideration of such factors as experience, training, education, and ability," 29 C.F.R. § 1620.15(a); "[e]ffort is concerned with the measurement of the physical or mental exertion needed for the performance of a job," 29 C.F.R. § 1620.16(a); and "[r]esponsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation," 29 C.F.R. § 1620.17(a). To be considered equal, jobs need not be identical in every respect. Rather, for purposes of the Act, "[e]qual means substantially equal and '[a]ny other interpretation would destroy the remedial purposes of the Act.'" *Wildi v. Alle-Kiski Medical Center*, 659 F.Supp.2d 640, 659 (W.D. Pa. 2009) (quoting *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970)). In evaluating the issue of "equal work", courts inquire as to "whether the jobs being

compared have a 'common core' of identical (or substantially similar) tasks." *Wildi*, 659 F.Supp.2d at 659 (citing *Brobst v. Columbus Servs. Int'l,* 761 F.2d 148, 156 (3d Cir. 1985)). If a common core of identical tasks exists, courts then consider whether "additional tasks" required by either of the jobs make the work performed by the different employees "substantially different." *Wildi*, 659 F.Supp.2d at 659.

In asserting the pay discrepancy between her and male attorneys in the Blair County public defender office, Plaintiff proceeds on two fronts. First, she notes that her $30,000 salary was $5,000 less than that of another full-time public defender, Donald Gibboney. Doc. No. 42 at 30; Doc. No. 46 at ¶¶ 18, 22. Second, she argues that her part-time hourly rate after her return from pregnancy ($16.48 per hour) was significantly less than the hourly rate (ranging from $28.38 to $57.19 per hour) paid to two other part-time male attorneys, David Beyer and Theodore Krol.[4] Doc. No. 42 at 30-1; Doc. No. 46 at ¶¶ 12, 25-8.

Defendant does not challenge these figures in its Motion, but instead asserts that Plaintiff did not perform "equal work" to Gibboney, Beyer, or Krol. Doc. No. 38 at 9. Regarding Gibboney, Defendant contends that he had prior experience both as a public defender and in managing employees, and was one trial short of being qualified for death penalty cases. Doc. No. 38 at 11. Defendant also contends that Plaintiff handled less difficult cases that Gibboney. Doc. No. 38 at 10. In response, Plaintiff argues that she performed all the regular tasks performed by other public defenders in the office (e.g., jury selections, preliminary hearings, waivers, and jail visits) and that Gibboney did not use his management skills or try death penalty cases. Doc. No. 42 at 32-3. Plaintiff also disputes Defendant's characterization of the type of

---

[4] Part time public defenders in Blair County are paid a salary not directly tied to a set number of hours. To arrive at her estimate for hourly rates, Plaintiff divides their salary by the number of hours they worked.

cases to which she was assigned.  Doc. No. 37 at 32; Doc. No. 44 at ¶ 28.  Regarding the part-time attorneys, both Plaintiff and Defendant employ similar arguments and assert similar facts when comparing Plaintiff's experience and responsibilities to Beyer and Krol.

The Court finds that while there were most likely differences between Plaintiff's work responsibilities and those of Gibboney, Beyer and Krol, it is premature to determine that such differences were so substantial as to preclude Plaintiff's establishment of a *prima facie* case for her EPA claim.  Plaintiff has identified a common core of tasks in her everyday responsibilities that are identical to responsibilities of the aforementioned male attorneys.  Regarding any differences that may have existed, a reasonable jury could find these to be insignificant; e.g., Gibboney was only *nearly* qualified for capital cases; capital cases were rarely tried; and differences in experience were only by a few years.  Further there are numerous disputes concerning material facts (i.e., whether Gibboney used his management experience and what types of cases Plaintiff worked on during her employment) which are best left to a jury's determination.  Accordingly, Plaintiff has established a *prima facie* case for her EPA claims compared both to Gibboney's salary and the hourly rate of Defendant's part-time public defenders.

### 2. Defendant's affirmative defense under the EPA

Once Plaintiff has established a *prima facie* case, the burden of persuasion shifts to Defendant, which can raise one of the four affirmative defenses stated in the Equal Pay Act. *Stanziale*, 200 F.3d at 107.  A difference in pay between opposite sexes is permissible if it is made pursuant to: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based upon any factor other than sex.  29 U.S.C. § 206(d)(1).  An employer cannot prevail at the summary judgment stage

based upon an affirmative defense unless it can prove the existence of the affirmative defense "so clearly that no rational jury could have found to the contrary." *Stanziale*, 200 F.3d at 107. As the Third Circuit has explained, the statute requires that "the employer submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *Id.* at 107-8.

In its Motion, Defendant argues that the salary discrepancy can be explained by factors other than sex. However, Defendant provides no explanation as to why Plaintiff's rate when she was working part-time after returning from her pregnancy differed from that of other part-time male public defenders. With regard to Gibboney, Defendant argues that 1) he had significant experience in criminal law; 2) his services were needed by the County; and 3) given his past experience and previous salary of $37,000, Gibboney negotiated his starting salary to $35,000. Doc. No. 38 at 13. However, while all of these are potentially legitimate justifications for the discrepancy in pay, there is insufficient evidence to conclude that no rational jury could find to the contrary. Given the possible discrepancy in pay between Plaintiff and part-time male attorneys, as well as allegedly sexist statements made by Plaintiff's supervisor DiFrancesco (discussed further below), a reasonable jury might conclude that there were other motivating factors for the discrepancy in pay between Plaintiff and Gibboney. Accordingly, Defendant's motion fails as to Plaintiff's Equal Pay Act claims.

### 3. Statute of limitations – whether Plaintiff's alleged violation was willful

Defendant further argues that even if it violated the EPA, such violations were not willful. Per the Act, a cause of action "shall be forever barred unless commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). However, an EPA claim "arising

out of a *willful* violation may be commenced within three years after the cause of action accrued." *Id.* (emphasis added).  Therefore, Defendant presents a statute of limitations defense to Plaintiff's EPA claim.

The Court notes that this defense was not pled anywhere in Defendants' Answer and Affirmative Defenses (Doc. No. 30).  Pursuant to Rule 8(c), "[i]n response to a pleading, a party must affirmatively state any avoidance or affirmative defense, including… statute of limitations."  As the Third Circuit has noted, "[t]he purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson v. Johnson*, 313 F.3d 128, 134-5 (3d Cir. 2002).  To be sure, the Third Circuit has also specified that a statute of limitations defense "does not necessarily have to be raised in the answer." *Chainey v. Street*, 523 F.3d 200, 209 (3d Cir. 2008) (quoting *Robinson* 313 F.3d at 135).  However, this does not mean that a statute of limitations defense can be raised at any time.  Rather, defendants must raise such a defense "as early as reasonably possible." *Robinson*, 313 F.3d at 135-6.  In explaining this standard, the Third Circuit approvingly noted a Seventh Circuit case, *Venters v. City of Delphi,* 123 F.3d 956 (7th Cir.1997), which found that defendants waived their statute of limitations defense when they did not raise it in their answer to the original and amended complaints, and first brought it a year after the case was filed in a memorandum in support of their motion for summary judgment. *Robinson*, 313 F.3d at 136.  Similarly, in the case *sub judice*, Defendant did not raise this defense in either of its answers to Plaintiff's First or Second Amended Complaints.  Instead, it first raised it in the instant Motion, almost 18 months after the filing of the original Complaint, and almost nine months after the filing of the Second Amended Complaint.  Therefore, Defendant has

waived the statute of limitations defense for Plaintiff's EPA claim.

### 4. Whether Defendant's actions were in good faith for liquidated damages purposes

Finally, Defendant asserts that Plaintiff is not entitled to liquidated damages on her EPA claim, on the grounds that Defendant acted in good faith in setting her salary.  To prevail on this argument, Defendant must show that its "act or omission giving rise to [the claim] was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the Equal Pay Act.  29 U.S.C § 260.  As the Third Circuit has noted, Defendant's burden is "a difficult one to meet."  *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991).  Defendant "must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions."  *Id.*  Here, Defendant has offered little to no evidence that it took any steps to ascertain the Act's requirements.  It simply notes that at least two other male attorneys hired by the office were paid the same salary as Plaintiff.  Doc. No. 38 at 15.  But these attorneys' salaries are not the basis for Plaintiff's claim; rather, her salary compared to Gibboney, Krol, and Beyer is.  Accordingly, the Court declines to bar liquidated damages at this stage of the litigation.  Defendant's Motion for Summary Judgment pertaining to Plaintiff's Equal Pay Act claims is denied in all respects.

### B. Title VII and Pennsylvania Human Relations Act

In her Second Amended Complaint, Plaintiff alleges that Defendant Blair County wrongfully terminated her in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  In response, Defendant argues that 1) Plaintiff has not established a *prima facie* case under either statute; 2) Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; and 3) Plaintiff cannot show that Defendant's proffered reason for her termination

10

was pretextual. The United States Supreme Court has established a burden shifting analysis for claims of discrimination under Title VII. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Third Circuit has indicated that gender discrimination claims under the PHRA are analyzed under the *McDonnell Douglas* standard. *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). Accordingly, the Court addresses Defendant's Title VII and PHRA arguments together.

### 1. Plaintiff's *prima facie* case

Under the *McDonnell Douglas* analysis, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Atkinson*, 460 F.3d at 454. The existence of a *prima facie* case of discrimination is a question of law to be decided by the Court. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003). To establish a *prima facie* case, Plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action." *Id.* at 798 (citing *McDonnell Douglas*, 411 U.S. at 802). The Third Circuit has recognized that the fourth element of a *prima facie* case in a wrongful termination case may be satisfied by proof that the Plaintiff was replaced by a person outside the protected class, such as a member of the opposite gender. See *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc) (citing *Waldron v. SL Industries*, 56 F.3d 491, 494 (3d Cir.1995)).

The parties do not dispute that Plaintiff was a member of the protected class (female/pregnant) or that she suffered an adverse employment action. As Plaintiff correctly notes, the issue of whether an employee is qualified is determined by whether she possessed the objective qualifications for the position. This minimum standard does not take into account

factors relating to actual job performance, such as insubordination. *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). Since the parties also do not dispute Plaintiff's license to practice law, she has met the minimum standard of being "qualified" as a public defender. For these reasons, Plaintiff has established the first three elements. Similarly, when viewing the evidence in the light most favorable to the non-moving party, Plaintiff can establish the fourth element due to her contention that she was replaced by a male, Justin Ketchel, and the undisputed fact that her adverse employment action occurred in close chronological proximity to her accouchement. See *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997) (finding "[t]emporal proximity is sufficient to establish the causal link") (citing *Jalil*, 873 F.2d at 708). Consequently, Plaintiff has met her burden of establishing a *prima facie* case.

### 2. Defendant's reason for terminating Plaintiff's employment

Once the Plaintiff has established a *prima facie* case of employment discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas*, 411 U.S. at 802. This burden of production is satisfied if the employer introduces "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Here, Defendant has provided such a reason – namely, Plaintiff's alleged falsification of timecards on December 3 and December 8. Doc No. 38 at 5-6. Further, if taken as true, the evidence provided by Defendant – including statements by DiFrancesco and Gibboney as to hours worked by Plaintiff – could permit the conclusion that there was a nondiscriminatory reason for Plaintiff's termination. Accordingly, Defendant has met its burden under the *McDonnell Douglas* test for Plaintiff's Title VII and PHRA claims.

### 3. Whether Defendant's proffered justification was pretextual

However, this does not end the inquiry. Once the employer provides a legitimate, nondiscriminatory reason for the employee's termination, the employee can argue that the proffered reason was not the actual one, by presenting evidence that either 1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or 2) "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Atkinson*, 460 F.3d at 454 (quoting *Fuentes* 32 F.3d at 762). In other words, a reasonable factfinder must be able to find that the Defendant's proffered reasons lack credence; the Plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Atkinson*, 460 F.3d at 454 (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108-09 (3d Cir.1997)).

Plaintiff contends that Defendant's reason is a pretext, and she raises numerous inconsistencies in Defendant's justification for Plaintiff's discharge, such as 1) evidence of inconsistencies in Defendant's justification for terminating Plaintiff's employment; 2) evidence of DiFrancesco's alleged sexist statements regarding Plaintiff's pregnancy and return to work; and 3) evidence that Plaintiff was held to a different reporting and compliance standard than other similarly situated employees. As this is a Motion for Summary Judgment, this Court must construe disputed facts in Plaintiff's favor.

Plaintiff raises Defendant's inconsistencies concerning the dates and circumstances of which Plaintiff allegedly falsified her hours worked. Defendant's current position is that Plaintiff was fired for claiming four hours that she did not work on December 3 and December 8, 2008. Doc. No. 38 at 5-6. Defendant claims that on December 3, DiFrancesco observed Plaintiff

13

arriving late to work and that she subsequently claimed hours on her timesheet that she did not work that morning. *Id.* at 18. Regarding December 8, Defendant suggests that Plaintiff left the office at 11:00 a.m., but reported that she worked until 3:00 p.m. *Id.* at 5. However, according to Plaintiff, at the time of her discharge, DiFrancesco told her that she was being terminated because she falsified her timecard for December 3 and December 4. Doc No. 46 at ¶ 149. For December 3, DiFrancesco allegedly indicated that Plaintiff had left early, but provided no other justification. *Id.* at ¶ 152. For December 4, Plaintiff indicates that DiFrancesco told her that Judge Steven Jackson had said she had left court early that day. *Id.* at ¶ 153. However, Plaintiff indicates that Judge Jackson has disputed this. *Id.* at ¶ 122-4. Later, at an unemployment hearing, DiFrancesco took the position that Plaintiff had left work early on December 8, 2008. *Id.* at ¶ 163. DiFrancesco also claimed that Plaintiff's employment was *not* terminated due to any discrepancies on December 4. *Id.* at ¶ 164.

Further, according to Plaintiff, DiFrancesco made numerous remarks that a reasonable jury could construe as sexist. Plaintiff contends that DiFrancesco 1) referred to the accouchement surgical procedure as ripping her "from toe to sternum"; 2) told her that she looked "chubby"; and 3) remarked that she really "looked pregnant." Doc No. 46 at ¶ 63-65. DiFrancesco also allegedly made comments regarding Plaintiff's pregnancy that relate to gender stereotypes, such as 1) repeatedly asking Plaintiff whether she really wanted to return to work and suggesting that she may want to stay home and take care of her child instead; 2) telling another public defender, David Beyer, that he was concerned that Plaintiff would not really return to work and that he did not believe her statements that she would return to work because he thought she would change her mind when she "sees that baby"; and 3) asking Beyer whether he knew of anyone who might be interested in Plaintiff's position. *Id.* at ¶¶ 66-9.

14

Various other factors would further enable a reasonable jury to conclude that Defendant's reasons for discharging Plaintiff are mere pretext. For example, Plaintiff alleges that DiFrancesco decided to fire her before he spoke with her to obtain her explanation of the purported timecard discrepancy. *Id.* at ¶ 146. A jury could conclude that DiFrancesco was aware that an attorney's work is not necessarily limited to the office or courtroom setting. Plaintiff could have been leaving the office to interview witnesses, meet clients, or any other number of tasks. Deciding to fire an attorney due to a discrepancy of a few hours without first asking that attorney what she was doing during that time presents the possibility of pretext. Moreover, allegedly requiring Plaintiff to keep a timecard while other part-time employees were not required to do so, *Id.* at ¶¶ 30, 93, and inquiring as to Plaintiff's hours before Plaintiff submitted her timecard could suggest pretext. *Id.* at ¶¶ 110, 137. Further, while other attorneys had been monitoring Plaintiff's timecards before she went on leave, DiFrancesco supposedly assumed this duty after she returned to work part time. *Id.* at ¶¶ 32, 94-95. Within three days of beginning to monitor Plaintiff's timecards, DiFrancesco allegedly asked another employee, Gibboney, about Plaintiff's hours. *Id.* at ¶ 110.

Plaintiff offers numerous additional examples of Defendant's inconsistent explanations and DiFrancesco's behavior that suggest pretext. The Court does not address each and every example because, after drawing all reasonable inferences in favor of Plaintiff, the examples already addressed easily supply a reasonable jury with sufficient evidence to find that Defendant's proffered reasons lack credence. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and PHRA claims.

## C. Family and Medical Leave Act claims

Defendant Blair County next opposes Plaintiff's claims for interference and retaliation under the Family and Medical Leave Act (FMLA). Congress enacted the FMLA in 1993, in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). The Act was designed to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accommodat[ing] the legitimate interests of employers." 29 U.S.C. §§ 2601(b)(1-3); see *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (stating that one of "[t]he primary purposes of the FMLA [is] to 'balance the demands of the workplace with the needs of families'"). The FMLA grants eligible employees the right to take up to twelve work weeks of leave during a twelve-month period for any of the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(A-D). At the end of the leave period, the employee has the right to be restored to his or her former position or an equivalent position. 29 U.S.C. § 2614(a)(1).

### 1. FMLA interference claim

Under the FMLA, it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Unlike Title VII and PHRA claims, in a FMLA interference claim, "the employer cannot justify its actions by establishing a legitimate business purpose for its decision" because

16

the claim "is not about discrimination... only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison*, 430 F.3d at 119-20. To state a claim for interference under the FMLA, a plaintiff must show that: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. See *Hayduk v. City of Johnstown*, 580 F.Supp.2d 429, 472 (W.D. Pa. 2008). Defendant argues that Plaintiff cannot establish an interference claim because she has not satisfied either the fourth or fifth elements of the interference test. Doc No. 38 at 22.

Regarding the fourth element – proper notice under FMLA – an employee must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.... [T]he employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c). As the Third Circuit has noted, "[t]his is not a high bar." *Scott v. UPMC*, 2011 WL 2601567, at *3 (3d Cir. July 1, 2011). All that is required is that an employee "provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." *Id.* (quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir.2007)). Given this standard, Defendant's argument fails. In viewing the facts in the light most favorable to the non-moving party, Defendant had reason to know that Plaintiff might want to exercise her rights under the FMLA. Plaintiff asserts that she completed a form requesting FMLA leave. Doc. No. 46 at ¶ 55. Although Plaintiff was not eligible for FMLA leave until November 26, 2008, given the aforementioned notice and Defendant's awareness of

both Plaintiff's pregnancy and later caesarean section surgery, a reasonable jury might conclude that Plaintiff validly attempted to assert her rights under the FMLA. As to the fifth element – whether Plaintiff was denied a FMLA benefit – Plaintiff meets her burden because Defendant fired her after she was entitled to FMLA leave. See *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) ("firing an employee for a valid request under FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee"). Therefore, Defendant's motion fails as to Plaintiff's FMLA interference claim.

### 2. FMLA retaliation claim

The FMLA also makes it illegal for employers to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FLMA. 29 U.S.C. § 2615(a)(2). Assuming, as is the case here, that there is insufficient *direct* evidence that the plaintiff's FLMA leave or request for leave was a substantial factor in the termination decision, courts employ the *McDonnell Douglas* analysis to evaluate retaliation claims. *Lichtenstein v. Univ. of Pittsburgh Medical Center*, --- F.Supp.2d ----, 2011 WL 3360337 (W.D.Pa. 2011). To establish a *prima facie* FMLA retaliation claim, Plaintiff must show that 1) she took FMLA leave, 2) she suffered an adverse employment decision, and 3) the adverse decision was causally related to her leave. *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). Defendant argues that Plaintiff has not established the first or third elements of this test.

In discussing Plaintiff's FMLA interference claim above, we have already noted that Plaintiff attempted to take FMLA leave through her notice several months prior to going on maternity leave. Therefore, the only matter that remains to be settled is whether Plaintiff established a causal link between her termination and her FMLA leave. Two factors are

relevant: (1) timing and (2) evidence of ongoing antagonism. *Abramson v. Wm. Patterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir.1997). In some cases, "an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection." *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir.1997). Alternatively, where time proximity is not unusually suggestive on its own, courts may consider additional evidence under the second factor, including "inconsistent reasons given by the employer for terminating the employee." *Marra*, 497 F.3d at 302.

Plaintiff meets this burden. As discussed for Plaintiff's Title VII and PHRA claims, Plaintiff's adverse employment action occurred in relatively close time proximity to her medical leave. Additionally, as previously noted, Defendant's stated reasons for Plaintiff's discharge have been inconsistent, enabling Plaintiff to cast doubt upon these reasons. Accordingly, when construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find in Plaintiff's favor. Consequently, Defendant's motion fails as to Plaintiff's FMLA retaliation claim.

**D. Equal Protection claims**

Finally, Plaintiff brings claims of gender-based discrimination pursuant to 42 U.S.C. § 1983, based on Defendants' alleged violation of the Equal Protection Clause of the Fourteenth Amendment. Defendants Blair County and DiFrancesco argue that Plaintiff's constitutional claims fail, and that she cannot sue Defendant DiFrancesco in his individual capacity because of qualified immunity.

To establish a Section 1983 claim relating to a denial of equal protection, a plaintiff must

make a showing of intentional discrimination. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990). Plaintiff must demonstrate that she was treated differently from those who are similarly situated to her. *Id.* The Third Circuit has recognized that a plaintiff may bring claims under Title VII and the Equal Protection Clause if the claims operate from the same set of facts. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990). Claims under Section 1983 apply the *McDonnell Douglas* burden shifting analysis. *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997). Claims under Title VII and Section 1983 have the same underlying elements. See *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997). Accordingly, in evaluating Plaintiff's Section 1983 claim, we refer to our Title VII analysis above and find that Plaintiff has met her burden in establishing discrimination. To the extent that Defendants' Motion relies on her failure to do so, it is denied.

The only remaining issue is whether the sole claim against Defendant DiFrancesco fails on the basis of qualified immunity. As already noted, when construing the evidence in the light most favorable to Plaintiff, there is sufficient evidence for a reasonable jury to conclude that DiFrancesco's actions were motivated by gender discrimination. Therefore, in order for qualified immunity to apply, DiFrancesco's conduct must not have violated an established constitutional right that a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Andrews*, 895 F.2d at 1479. As the Third Circuit noted over twenty years ago in *Andrews*, "the right to be free of discrimination based upon sex in the workplace, [is] well grounded in law and widely known to the public." *Id.* For this reason, the Court finds that qualified immunity does not apply to Defendant DiFrancesco. Accordingly, the Court denies Defendants' Motion for Summary Judgment in all respects pertaining to Plaintiff's 42 U.S.C. § 1983 claims.

## VI. CONCLUSION

For the reasons outlined above, Defendants' Motion for Summary Judgment is **DENIED** in all respects.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERRIN RECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 3:09-cv-115 |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| COUNTY OF BLAIR, PENNSYLVANIA, | ) | |
| and JAMES DIFRANCESCO, Chief | ) | |
| Public Defender, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 8th day of November 2011, this matter coming before the Court on Defendants' Motion for Summary Judgment (Doc. No. 37), **IT IS HEREBY ORDERED** that the motion is **DENIED** in all respects.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**